UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA TYSON, as Next Friend of
B.G., a minor,

      Plaintiff,

v.

Case No. 1:16-cv-130
Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**OPINION**

Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for social security income (SSI).

Plaintiff was born in 2010. PageID.192. An application for SSI was filed on behalf of plaintiff on January 31, 2014. PageID.38. After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) held a hearing, reviewed plaintiff's claim *de novo*, and entered a decision denying the claim on March 2, 2015 (AR 13-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the court for review.

---

[1] Although Lisa Tyson is the nominal plaintiff, the term "plaintiff" herein shall refer to the minor child, B.G., the real party in interest. The court notes that the Administrative Law Judge's decision refers to the minor, B.G., as "the claimant."

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). An individual under the age of 18 shall be considered disabled if the child

> has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or

> which has lasted, or can be expected to last for a continuous period of not less than 12 months.
>
> 42 U.S.C. § 1382c(a)(3)(C)(i).
>
> There is a three step process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924.

*Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). *See also*, *Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 832 (6th Cir. 2009) (listing framework for a three-step inquiry).

Whether a child's impairment functionally equals a listed impairment is determined by a review of six "domains" which measure the child's ability to function: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To establish "functional equivalence" of a listed impairment, the claimant has to show either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Under the regulations, a "marked limitation" in a domain "interferes seriously with your ability to independently initiate, sustain, or complete activities," while an "extreme limitation" in a domain 'interferes very seriously with your ability to independently initiate, sustain, or complete activities." *See* § 416.926a(e)(2)(i) and (3)(i).

## II. ALJ'S DECISION

Following the three steps, the ALJ first found that plaintiff was born in 2010, was a pre-schooler when the application was filed on January 31, 2014, and is currently a pre-schooler

3

under the regulations, 20 C.F.R. § 416.926a(g)(2). PageID.41. Plaintiff has not engaged in substantial gainful activity since the application date. *Id*. Second, plaintiff had the severe impairment of pervasive developmental disorder, alternatively referred to as autism spectrum disorder. *Id*.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets, medically equals or functionally equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. In this regard, the only listing that would potentially apply is Listing 112.10 (autistic disorders and other pervasive developmental disorders). *Id*. The ALJ also found that plaintiff did not have an impairment or combination of impairments that functionally equals the severity of the listings. In reaching this determination, the ALJ addressed the six domains as follows.

> Acquiring and using information. "The claimant has no limitation[.]" PageID.45.
>
> Attending and completing tasks. "The claimant has less than marked limitation[.]" PageID.46.
>
> Interacting and relating with others. "The claimant has a marked limitation[.]" PageID.47.
>
> Moving about and manipulating objects . "The claimant has no limitation[.]" PageID.49.
>
> Caring for yourself. "The claimant has less than marked limitation[.]" PageID.50.
>
> Health and physical well-being. "The claimant has no limitation[.]" PageID.51.

Based on this record, the ALJ concluded that plaintiff was not under a "disability" as defined in the Social Security Act since filing the application for SSI on January 31, 2014 (AR 51).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

The decision violates the Social Security Administration's Rules and Regulations on using medical opinions to evaluate whether plaintiff's claim medically or functionally equals any listed impairment.

Plaintiff's claim appears to be something of a moving target. In her initial brief, plaintiff contests the determination of functional equivalence, stating that "[t]he ALJ was required to obtain an updated medical opinion but failed to do so." Brief at PageID.416. In this regard, plaintiff notes that the ALJ found that the opinion of the medical consultant, William Schirado, Ph.D., "is not entirely supported given the new information on file." PageID.45, 410. While plaintiff's initial brief describes her condition, it does not identify the new information which impacted the ALJ's decision.

The record reflects that the ALJ reviewed Dr. Schirado's April 3, 2014 opinion regarding plaintiff's functional equivalence under the six domains. PageID.44, 135, 138. However, the ALJ did not adopt all of Dr. Schirado's opinions based on "new information":

> Dr. Schirado's opinion is adopted with slight modification in that the third domain of interacting and relating to others is at a marked deficit.
>
> Dr. Schirado found that the child had no marked limitation in either of the six domains that that [sic] is not entirely supported given the new information in file.

PageID.44-45. Thus, the ALJ adopted all of Dr. Schirado's opinions except with respect to the third domain (interacting and relating with others), which the ALJ adjusted from a "less than marked limitation" to a "marked limitation." The ALJ did not explicitly address the new evidence in discussing the third domain, nor compare that evidence with Dr. Schirado's opinion. Rather, the

5

ALJ presented a chronological narrative. Presumably, the new information would include hearing testimony and records which were submitted after Dr. Schirado issued his opinion on April 3, 2014.

After receiving defendant's response, plaintiff's filed a reply brief which identifies the new information as testimony at the administrative hearing held on January 28, 2015 which Dr. Schirado would not have heard. Reply Brief (docket no. 13, PageID.448-450); Hearing Trans. (docket no. 8-2, PageID.56-129). Plaintiff testified that automatic toilets and hand dryers in bathrooms are very loud and "freak her out." PageID.68-70. Plaintiff's mother testified that plaintiff is terrified of restrooms, even the one at home. PageID.75. Plaintiff has a problem with diet, and became physically ill when the school served eggs. PageID.78-79. Plaintiff is afraid of loud noises, such as buzzers at sporting events, sneakers on a basketball court and babies crying, as well as other noises such as the beep of a phone, the sound of battery operated toys, or even people talking at a normal level. PageID.83, 94-96. Plaintiff is often upset when interacting with other children and has hit and bit her sister. PageID.84-85. She is scared of hair dryers which makes it difficult to get her hair cut. PageID.87-88. Plaintiff does not usually use the bathroom at school. PageID.89. Plaintiff cannot tolerate loud noises but when she has a "melt down" she screams very loudly. PageID.92. Plaintiff will not take her clothes off to take a bath because she does not want to be cold; according to her mother, "it's almost like a pain she feels" when she steps out of the bath. PageID.92.

Claire Rasmus, a "supports coordinator" at Spectrum Health Services who works with plaintiff's socialization skills, testified that the child has a fear of loud noises and anxiety which interferes with her ability to interact with other children, as well as going to places such as malls,

play areas, grocery stores, and restrooms. PageID.109-117.[2] Plaintiff does not understand other children or social cues. PageID.117-118, 123. She has tics like other children with autism, e.g., she will yelp or flap her hands if overwhelmed, and "walk on her tip toes and kind of flap around" when excited. PageID.123. She sobs when taken to a restaurant restroom and "shuts down" when she spots restroom blow dryers. PageID.124.

Based on this evidence presented at the administrative hearing, plaintiff augments her claim, adding that "[t]his new evidence should have triggered a new medical opinion for this domain [i.e., caring for yourself]." PageID.448-450. Plaintiff also states that the evidence supports a finding of an "extreme limitation" in the domain of "interacting and relating to others." *Id*.

Plaintiff relies on Social Security Ruling ("SSR") 96-6p ("Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council; Medical Equivalence"), as requiring an ALJ to consult a medical advisor before making any conclusion regarding her functional equivalence under the six domains.[3] SSR 96-6p provides in part that:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or

---

[2] The Court notes that Claire's name appears as "Razmus" in the transcript. PageID.109.

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

> psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). As the Sixth Circuit explained:

> Social Security Ruling 96-6p governs the need for updated medical expert opinions. It requires an update when either (1) there is evidence of symptoms, signs and findings that suggest to the ALJ or Appeals Council that the applicant's condition may be equivalent to the listings; or (2) when additional medical evidence is received that "in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding" that the impairment does not equal the listings.

*Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 830 (6th Cir. 2009).

The gist of plaintiff's claim is that the ALJ was required to obtain an updated medical opinion before determining the issue of functional equivalence. Although plaintiff relies on SSR 96-6p, a separate ruling addresses whether a medical opinion is required in finding functional equivalence for a child, SSR 09-1p ("Determining Childhood Disability Under the Functional Equivalence Rule - the 'Whole Child' Approach"). In SSR 09-1p, the agency distinguishes the use of medical opinions in functional equivalence vs. medical equivalence, stating in pertinent part:

> While SSR 96-6p requires that an ALJ or the AC [Appeals Council] must obtain an updated medical expert opinion before making a decision of disability based on medical equivalence, there is no such requirement for decisions of disability based on functional equivalence. Therefore, ALJs and the AC (when the AC makes a decision) are not required to obtain updated medical expert opinions when they determine that a child's impairment(s) functionally equals the listings.

SSR 09-1p, 2009 WL 396031 at *12 (Feb. 17, 2009). The undersigned concludes that SSR 09-1p is dispositive on the issue of whether an updated medical opinion is required in decisions based on functional equivalence. As this Court found in *Finney v. Commissioner of Social Security*, No.

1:15-cv-460, 2016 WL 2996623 at *3 (W.D. Mich. May 25, 2016), under the provisions of SSR 09-1p, "an ALJ is not required to seek an updated opinion from an expert regarding functional equivalence." Accordingly, plaintiff's claim of error with respect to requiring an updated medical opinion related to functional equivalence will be denied.

Nevertheless, the issue remains regarding the ALJ's evaluation of the new evidence, including the testimony at the hearing, and his modification to Dr. Schirado's opinion. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Here, the Court cannot trace the path of the ALJ's reasoning. The ALJ has not identified the new evidence or explained how such new evidence, including the testimony from plaintiff's mother and Ms. Rasmus, caused him to modify Dr. Schirado's opinion. Accordingly, this matter will be reversed and remanded pursuant to 42 U.S.C. § 405(g). On remand, the Commissioner should identify the new evidence obtained since Dr. Schirado issued his April 3, 2014 opinion, determine whether an updated medical opinion is needed, and re-evaluate the evidence with respect to the third domain ("interacting and relating with others") and the fifth domain ("caring for yourself").

### IV.     Conclusion

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner

9

should identify the new evidence obtained since Dr. Schirado issued his April 3, 2014 opinion, determine whether an updated medical opinion is needed, and re-evaluate the evidence with respect to the third and fifth domains. A judgment consistent with this opinion will be issued forthwith.

Dated:  March 27, 2017                        /s/ Ray Kent
                                              RAY KENT
                                              United States Magistrate Judge